Moyer, C.J.,
concurring.
{¶ 11} I agree with the majority’s analysis and conclusion that the UM/UIM coverage provisions of former R.C. 3937.18 apply to the insurance policy in this case.[1] Owners and operators of motor vehicles in Ohio must maintain and file proof of financial responsibility. R.C. 4509.101(A)(1); R.C. 4509.45. As the majority states, R.C. 4509.45(A)(1) through (5) provides that such proof may be *602 shown by means of a financial-responsibility identification card, a certificate of insurance, a bond, a certificate of deposit of money or securities, or a certificate of self-insurance. URI determined that compliance other than by the purchase of insurance was either not feasible or too costly. USF & G in fact expressed in its brief that “a pure self-insurance program was fraught with administrative and legal complications and significant costs.” Thus, in an effort to minimize costs, URI chose to purchase from USF & G an insurance policy that approximated self-insurance. Regardless of the ultimate distribution of risk, URI was able to comply with state law by filing a certificate of insurance. URI and USF & G seek to describe their contract as insurance for one purpose and as something else for another purpose. They now assert that the contract is not a contract for the provision of insurance coverage. It is not consistent to argue that the contract is an insurance policy for purposes of complying with Ohio’s financial responsibility requirement and that the same policy is not one of insurance in order to avoid the mandatory UM/UIM offering under former R.C. 3937.18.
{¶ 12} Moreover, the policy provides that “[b]ankruptcy or insolvency of [URI] * * * will not relieve [USF & G] of any obligations under this Coverage Form.” USF & G contends that the Automobile Self-Funded Retention Endorsement[2] negates this provision so that URI retains 100 percent of the risk of loss. Although the policy does not explicitly state that the fronting provisions have no effect on USF & G’s obligation to pay claims in the event that URI files for bankruptcy or becomes insolvent, we are guided by the longstanding rule that ambiguities in insurance policies are to be construed strictly against the insurer. Faruque v. Provident Life & Ace. Ins. Co. (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus.[3] After resolving any uncertainty against USF & G, it is clear thpt USF & G exposed itself to at least some risk. The fact that USF & G carried some risk of loss further verifies that the arrangement in this case was an insurance policy and is therefore subject to the previous decisions of this court that create liability for UM/UIM coverage pursuant to former R.C. 3937.18.
{¶ 13} For the foregoing reasons, I concur in the decision of the majority.

. In 2001, the General Assembly repealed the mandatory-offering component of R.C. 3937.18. 2001 Am.Sub.S.B. No. 97. This decision therefore has limited application.

. This is the endorsement that contains the fronting provisions.

. At oral argument counsel, for USF & G initially said that USF & G “would have to step in and do that [cover the loss in the event of URI’s insolvency or bankruptcy].” However, counsel later stated that he did not want to concede that USF & G would be liable, although he did acknowledge that it was a legitimate issue.